UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x
BELLA INGBER, SABRINA MASLAVI,
NEVO YEMINI, AVIGAIL TEILER, and
STUDENTS AGAINST ANTISEMITISM, INC.,

                                            Plaintiffs,

          -against--                                 1:23-cv-10023 (LAP)

NEW YORK UNIVERSITY,

                                            Defendant.
-----------------------------------------------------------------------------x

## DECLARATION

I, Amene M. Husain, declare under penalty of perjury that the following facts are true and correct:

1. I am a scholar and an artist. I have taught as an adjunct professor in a number of NYU departments since 2016. My classes are very popular and often oversubscribed. I have never received a complaint from students. I teach movement-generated theory and practices of self-determination and decolonial aesthetics, which themselves comprise part of the critical field of intersectional and decolonial study. In Spring 2024, I was scheduled to teach a course called *Justice Lab* at NYU's school of College of Arts and Sciences and a course called *Art and the Practice of Freedom* at NYU

school Steinhardt School of Culture, Education and Human Development. I have taught these courses at NYU since Spring 2019 and Spring 2017, respectively. I also taught other courses throughout my time with NYU, including *Art, Activism, and Beyond* at NYU's Gallatin School of Individualized Study, *Decolonization is not a Metaphor* at Center for Experimental Humanities in 2017, *Media Activism and Social Movement* at NYU's department of Media, Culture, and Communication in Fall 2018.

2. As part of my scholarship and artistic work, I engage in decolonial art practices, anti-colonial pedagogy and aesthetics. This scholarship and art practice is well-known internationally and includes my affiliation with the art-based collective, Decolonize This Place (DTP). DTP is neither an organization nor a single person. It is a concept, analysis, and vision shared by a collective of individuals calling for radical change, democratization and transformation of our educational, cultural and other social institutions. DTP began as a name of a protest at a museum and grew into an influential movement that has involved the participation of thousands of people, in New York and globally. Its point of origin was a 2016 photography exhibition about the Middle East at the Brooklyn Museum that took issue with the selection of content for the show, which was titled *This Place*. This

protest fed into an emerging paradigm concerning museums that was calling attention to the lingering impacts of colonial history. Soon, this paradigm was sweeping through the education and cultural sectors, and has now become established, if not dominant, in the professional field of museum curators. The arts advocacy work of DTP is, in part, responsible for its prominence. The call for transformation and to "decolonize this place" has been an inspiration and an important catalyst for the far-reaching decolonial movement. Over the years, many advocates (scholars, artists, critics, curators, writers, workers, and students), including myself, have spoken and acted in the name of DTP. They have been joined by many others, globally, who may be unfamiliar with the original groupings, but who have adopted the same sense of urgency in transforming their institutions. It is now increasingly accepted that the decolonial analysis pioneered by the original DTP formation is an indispensable component of many professional enterprises---from the arts and media, academe, and environmental justice to public administration, diplomacy, and international relations.

3. I have a B.A. in Philosophy and Political Science, a J.D. from Indiana University School of Law, and an LL.M. from Columbia Law School. I

practiced law for five years at the New York law firm of King & Spalding before transitioning to art, where I attended the School of the International Center of Photography and was accepted into the Whitney Independent Study Program. In addition to NYU, I have taught courses, as an adjunct professor, at the Pratt Institute (since 2015) and The New School, School of Media Studies (2012-2017).

4. I am a Palestinian-American, born in Illinois, and raised in Palestine since I was two years old. My father was born in Palestine and immigrated to the United States. My mother was born in the United States. In her twenties, she went to Palestine where they met, married, returned to the USA, and then went back again after my birth to raise a family in the occupied West Bank.

5. In addition to the personal distress of witnessing the genocide unfolding in Palestine, I have been directly and negatively impacted by the Complaint itself and NYU's over-zealous reaction to the Complaint which has led to the suspension and/or investigation of many adjunct professors and students for speech-related activity about the war on Gaza and the equation by the NYU administration of any pro-Palestinian speech with antisemitism and a violation of NYU's antidiscrimination policy.

6. A week before Spring 2024 classes were to start at NYU, I was called to meetings with the NYU Office of Human Resources (HR), which I attended on January 19 and 22, 2024. I was questioned about speech-related activities and my affiliation with DTP. The HR officers referred to DTP's social media and brought up posts relating to the war on Gaza, indicating that there were allegations and complaints made concerning me but refusing to provide any further context or details regarding such complaints.

7. Hours before my first class was set to begin on Tuesday, January 23, 2024, the class was canceled by the NYU administration. Students were informed of the cancellation by email and were left without an explanation for the last-minute cancellation. On the same day, I received two letters dated January 22, 2024, one from Steinhardt School of Culture, Education and Human Development, and the other from the College of Arts and Sciences, notifying me that the NYU Office of Equal Opportunity (OEO) had received "reports regarding [my] conduct" and that I was suspended, effective immediately, pending an investigation by OEO regarding the "allegations that have been made against you." Neither letter mentioned the nature or source of the allegations against me or any other basis for my suspension.

8. Without any warning to me, NYU publicly announced my suspension in a

statement given to the press on January 25 stating, "To be clear, Mr. Husain has been suspended and is not currently teaching any classes at NYU" in response to media queries. The public statement was picked up and sensationalized by right-wing media outlets that published malicious, "doxxing" articles about me, which made egregious false accusations attacking my character and speech-related activities. These articles constructed a false narrative using NYU's decision to suspend me as proof of their claims, with leading headlines like "NYU suspends two professors after questioning the horrors of October 7, Hamas captivity," featuring my image. As a result, I have received all kinds of targeted harassment, including numerous death threats and hateful messages sent to my personal email and through social media. The public statement by NYU remains on its website as of this date and is cited in NYU's amended answer to the Complaint as evidence of their efforts to combat antisemitism.

9. Despite my real concerns regarding the suspension and investigation process followed by NYU and their lack of transparency concerning the allegations against me and the basic guidelines and investigation process, as well as the jurisdiction of OEO to investigate off campus protected speech activities, I participated in good faith, as requested by OEO, in two, one-hour

investigation sessions on February 7, 2024 and February 12, 2024 where I was questioned by two lawyers in their capacity as global investigators for OEO. I was accompanied by members of the NYU faculty union.

10. During the investigation, I was presented with two pixelated, barely legible screenshots, and three phrases from an edited video of a teach-in I conducted off campus, in private, during a semester in which I was not teaching, to attendees who were not NYU students about a subject that I teach and happen to be an expert on. These pieces of evidence were presented without any context. In particular, the video was highly-edited, isolating short statements, out-of-context, and presenting about 2.22 minutes of a 45-minute talk.

11. One of the screenshots provided as evidence during the investigation was from an Instagram post, one slide of several slides that dated back to mid-2021 made from the DTP account. At that time, it was meant to be the last slide on an Instagram carousel with previous slides that offer crucial context and framing to even be able to construct its intended meaning. This particular slide was taken down in 2021 shortly after posting. Therefore, this "post" only exists on doxxing sites and far right-wing social media accounts to attack DTP. A quick search on X confirms that this screenshot

began circulating on these sites in 2021.

12. At no point during the investigation were any questions directed to me in order to gain a better understanding of my academic work and scholarship, or my areas of expertise which relate to such complex subjects as "Zionism," "settler-colonialism," "nation-states" and "genocide" and would therefore contextualize the accusations against me. Such inquiries would have placed them within a larger intellectual framework worthy of an in-depth academic discussion. As it stands, the investigation exhibits a clear violation of academic freedom and protected off-campus speech by simplistically equating my words with antisemitism.

13. The OEO investigation also did not address the accusations made against me in the Complaint, which cites two incidents of off-campus, protected speech activity that I do not recall, including verbal statements, some of which were made by other individuals, and a post to the DTP Instagram account, which is a collective account that a number of individuals administer. These public accusations in the Complaint added further fuel to the public doxxing and reputational attacks directed at me.

14. NYU administration's partial acceptance of the IHRA definition of antisemitism – equating any criticism of the nation state of Israel with

antisemitism – and attendant crackdown on pro-Palestinian speech (which intensified after the Complaint) has dire consequences on our collective intellect, memory, and imagination. No quality education oriented to creating better worlds can come from this. Class cancellations and suspensions attack people's livelihood and material condition, and tarnish reputations. Repressive measures further entangle people with bureaucratic and legal mechanisms that sap energy away from learning, and seeing and caring for each other.

15. The harm done is not only to me as an individual in terms of my reputation and ability to pursue my academic and scholarly career but more broadly to NYU's academic community and the value of the educational and scholarly environment that NYU provides to its students and faculty. One of the most valuable educations an institution like NYU can provide to any student is one that makes for more informed and caring members of society who believe their opinions and actions matter in the world. Further, fundamental principles of academic freedom require an environment where scholars and students alike are free to pursue their academic research and interests without fear of retribution or retaliation. A further court-ordered institutionalization of the full IHRA definition of antisemitism will only

exacerbate these harms.

Executed March 2024, at New York, New York.

Amene M. Husain

_Amene Husain_