UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BELLA INGBER, SABRINA MASLAVI, NEVO YEMINI, AVIGAIL TEILER, and STUDENTS AGAINST ANTISEMITISM, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> NEW YORK UNIVERSITY, <br><br> Defendant. | Case No. 1:23-cv-10023-LAP <br><br> Hon. Loretta A. Preska |

### NEW YORK UNIVERSITY'S OPPOSITION TO MOTION TO INTERVENE BY AMENE HUSAIN, REBECCA KARL, AND ANDREW ROSS UNDER RULE 24(a) & (b)

In this lawsuit, Plaintiffs challenge the adequacy of New York University's ("NYU" or "University") ongoing efforts to respond to antisemitic conduct on its campus. At a pre-motion conference on March 21, 2024, the Court explained on-the-record that it was inclined to deny NYU professor Dr. Andrew Ross's intended motion to intervene as a defendant under Rule 24(a) because Dr. Ross lacks a "direct, substantial, and legally protectable" interest and that, in any event, NYU adequately protects whatever interest Dr. Ross may have. Decl. of Jennifer B. Sokoler, Ex. A at 13:18-24, 14:22-17:7 ("Ex. A"). On April 6, Dr. Ross and two colleagues (collectively, "the Professors") filed a motion, this time seeking to intervene as of right under Rule 24(a) or, in the alternative, requesting permissive intervention under Rule 24(b). ECF 46, 52. The

1

Court should deny the Professors' motion, which suffers from the flaws that the Court identified at the pre-motion conference.[1]

## BACKGROUND

Plaintiffs allege that NYU has been deliberately indifferent to incidents of antisemitism on campus following the October 7, 2023 terrorist attack in Israel. ECF 1 (Complaint); ECF 25 ("FAC"). NYU vigorously disputes those allegations, and it moved to dismiss the FAC with prejudice on March 18, 2024. ECF 38.

Before NYU filed its motion to dismiss, Dr. Ross filed letters on January 25, 2024, and March 13, 2024, seeking leave to move to intervene as a defendant based on allegations that the litigation jeopardizes his "academic and personal freedoms" and that NYU will not defend his interests adequately because it is "already applying a definition of antisemitism that is extremely vague and overbroad." ECF 22, 33.

On March 21, the Court held a conference on Dr. Ross's request. Ex. A. After hearing argument from the parties and Dr. Ross, the Court explained that "Professor Ross's asserted First Amendment interest is too remote to warrant mandatory intervention" and would "'inject collateral issues into' this litigation." *Id.* at 14:22-23, 16:13-19. The Court also determined that Dr. Ross had not shown that NYU would inadequately represent his interests. *Id.* at 16:23-17:7.

Despite the Court's reasoned opinion, counsel for Dr. Ross asked for leave to file a formal motion on behalf of Dr. Ross and another unidentified client. *Id.* at 17:8-18:8. The Court observed that the letter briefs that Plaintiffs, NYU, and Dr. Ross had filed were "thorough[]," but agreed to allow Dr. Ross's counsel to make a motion. *Id.* at 18:8-19. The Court advised Plaintiffs and NYU

---

[1] As suggested by the Court, Ex. A at 10:22-25, NYU incorporates by reference its arguments at the March 21, 2024 conference, *id*. at 4:25-5:24; 8:5-8:19, and in its January 31, 2024 letter responding to Dr. Ross's proposed motion to intervene, ECF 23.

2

that they could choose whether to oppose the motion or to rely on their earlier letter briefs.  *Id.* at 19:8-10.

On April 6, 2024, Dr. Ross, joined by Amene Husain and Rebecca Karl, filed the instant motion, which makes arguments that are materially identical to those that the Court previously rejected.  Namely, the Professors contend that:  (i) they have an interest cognizable under Rule 24 because Plaintiffs advocate for a definition of antisemitism that impedes the Professors' academic freedom and freedom of speech, *see* ECF 52 at 24; and (ii) NYU inadequately represents the Professors' interests because the University's existing policies incorporate the definition of antisemitism to which they object, *see id.* at 25-26.

## ARGUMENT

The Professors' request for intervention is baseless for the reasons that the Court has already identified and it should therefore be denied.

## I.   THE PROFESSORS ARE NOT ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(A).

The Professors cannot make either of the showings required to intervene as of right.  *First*, they cannot demonstrate a "direct, substantial, and legally protectable" interest that may be impaired by the disposition of the action.  *Floyd v. City of New York*, 770 F.3d 1051, 1060 (2d Cir. 2014).  The Professors claim the same interest that Dr. Ross asserted, *i.e.*, that the definition of antisemitism "advanced by Plaintiffs and already applied by NYU" impairs their First Amendment-protected speech and academic freedom.  ECF 52 at 22-24.[2]  But the Professors' brief

---

[2] Although NYU is a private university, the Professors invoke the First Amendment.  ECF 52 at 26.  NYU agrees that federal law does not require the University to punish unwelcome speech.  ECF 38 at 36-37; *see infra* at 5-6.  But that does not mean that the *Professors* have any First Amendment interest in actions that *NYU* takes as a matter of its discretion.  To the extent Intervenors base their motion on such discretionary actions, there is plainly no state action.  *See, e.g.*, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173 (1972) (no state action simply because "the private entity receives any sort of benefit or service at all from the State, or if it is subject to state regulation in any degree whatever").  And to the extent the Professors mean to argue that the state-action requirement is satisfied only

implicitly acknowledges that this case is *not* a dispute over the definition of antisemitism in NYU's policies, as those policies *already* incorporate the widely accepted definition that Plaintiffs prefer and to which the Professors object.  Rather, this case is about the adequacy of NYU's response to conduct that may be discriminatory under federal law.  The Professors have no legally protectable interest in such conduct.  The Court should reject the Professors' effort to "inject [a] collateral issue[]" into this action.  Ex. A at 16:13-19 (citing *United States v. New York City Hous. Auth.*, 326 F.R.D. 411, 415 (S.D.N.Y. 2018)).

Further, the relationship between this lawsuit and any *new* restriction on the Professors' conduct is too speculative to satisfy Rule 24(a).  As the Court previously noted, concerns about a new policy chilling NYU faculty conduct or giving rise to future disciplinary actions are "contingent upon the occurrence of a sequence of events before [they become] colorable," *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (quotation omitted), including:  (i) the outcome of *this* proceeding; (ii) any policies that the University *may* adopt in response to that outcome; and (iii) the application of those *possible* policies to conduct that has yet to occur, *see* Ex. A at 15:3-18.  This type of "contingent" interest "cannot be described as direct or substantial." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96-97 (2d Cir. 1990); *see also Peoples Benefit Life Ins. Co.*, 271 F.3d at 417 (an "indirect and contingent" interest is "not cognizable" under Rule 24(a)); Ex. A at 15:3-18.  And Professors cite no contrary precedent.  *See, e.g.*, *Rivera v. New York City Hous. Auth.*, 1995 WL 375912, at *3-4 (S.D.N.Y. June 23, 1995) (permitting intervention under Rule 24(b) in a class action where the putative intervenors shared common questions of law or fact with the named plaintiffs, and intervention would "provide the court with a more complete understanding of the class-wide claims"); *E.E.O.C.*

---

because "this Court" is itself "a state actor," the Professors' position would render the state-action requirement meaningless, because it would be satisfied in *every* case.  That is not the law.

*v. Loc. 638*, 2003 WL 21767772, at *1 (S.D.N.Y. July 30, 2003) (allowing intervention where the intervenors were "victims of discrimination" and the "litigation was originally brought to address discrimination against them"); *United States v. City of Buffalo*, 1985 WL 1276, at *1 (W.D.N.Y. Mar. 25, 1985) (allowing intervention under Rule 24(b) where a final decree in the litigation would affect the employment prospects of the putative intervenors); *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 800-01 (2d Cir. 2022) (reversing decision denying intervention based on the district court's conclusion that putative intervenors had no cognizable interest in the merits phase of a lawsuit challenging policies relevant to their physical safety because the court would decide the legal question correctly).

The inclusion of putative intervenor Amene Husain, who has been suspended pending investigation, does not cure this defect.  *See* ECF 52 at 7-9, 24.  The investigation into Professor Husain concerns alleged violations of NYU's existing policies and is being conducted consistent with those policies.  To the extent Professor Husain disagrees with the outcome of that investigation once it concludes, this litigation affords him no remedy.  Intervention "is concerned with protecting an interest which practically speaking can only be protected through . . . the current proceeding" and is therefore inappropriate here.  *United States v. City of New York*, 179 F.R.D. 373, 378 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 360 (2d Cir. 1999) (quotation omitted).

*Second*, as this Court has already recognized, the Professors are not entitled to intervene for the independent reason that NYU adequately represents whatever interest they have in the litigation.  *See* Ex. A at 16:23-17:7.  When a would-be intervenor seeks the same relief as an existing party to the litigation, a "more rigorous showing of inadequacy" of representation is required.  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001).  Here, the Professors and NYU seek identical relief, namely dismissal of the FAC with prejudice.  Consistent

with that objective, NYU has moved to dismiss the FAC on numerous grounds.  *See* ECF 38.[3]  Against this backdrop, the Professors cannot overcome the "presumption" that NYU adequately represents their interests in this litigation.  *See Butler*, 250 F.3d at 179.

The Professors contend that NYU's representation is deficient because the University did not invoke the First Amendment in its motion to dismiss.  ECF 52 at 25-26.  That argument is wrong as a factual matter:  NYU argued that "[f]ederal law does not—and could not—require the University to punish 'unwelcome speech,' even if the University disagrees with it."  ECF 38 at 36; *see also id.* at 37 n.19 (explaining that "[a]ny contrary interpretation of Title VI would be inconsistent with the First Amendment").  In any event, the fact that the University chooses to respond to certain incidents in a manner to which the Professors object does not mean that NYU does not represent their interests.  Courts have adopted a deferential standard to review how universities address discrimination because they understand that universities need to balance competing interests, including those of students and faculty.  *See Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 648 (1999) (explaining that courts afford school administrators "flexibility" when addressing discrimination and "refrain from second-guessing the[ir] disciplinary decisions").  Allowing members of a university community to intervene anytime they do not like how that balance has been struck would undermine the discretion that this doctrine is meant to protect.

---

[3] By contrast, the cases that the Professors cite, *see* ECF 52 at 25, involved governmental actors or other individuals with a specific interest in the litigation that was distinct from the relief sought by the existing parties.  *See Garcia v. Berkshire Nursery & Supply Corp.*, 2023 WL 8593585, at *3 (S.D.N.Y. Dec. 8, 2023) (Acting Secretary of Labor's interest in asserting informant's privilege, which "belong[s] to the Government," was inadequately represented by existing private parties); *Sec. & Exch. Comm'n v. Berman*, 2021 WL 2895148, at *2 (S.D.N.Y. June 8, 2021) (allowing the Government to intervene where "the parties to th[e] civil litigation [did] not represent the Government's interest with respect to the investigation and enforcement of federal criminal statutes"); *New York ex rel. Am. Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.,* 2022 WL 2758023, at *3 (S.D.N.Y. July 14, 2022) (putative intervenor's interest in objecting to proposed settlement was inadequately represented by the state, which favored the settlement).

## II. PERMISSIVE INTERVENTION UNDER RULE 24(B) IS ALSO UNWARRANTED.

For the same reasons that the Court should deny the Professors' motion to intervene under Rule 24(a), their request for intervention under Rule 24(b) also fails. *See Cont'l Indem. Co. v. Bulson Mgmt., LLC*, 2020 WL 6586156, at *3 (S.D.N.Y. Nov. 10, 2020) (holding that the same considerations that render a party ineligible for intervention as of right "militate strongly . . . against granting permissive intervention.") (quotation omitted). Additionally, the Professors' permissive intervention motion should be denied because "granting . . . intervention will unduly delay or prejudice the adjudication of the rights of the existing parties," *id.* (quotation omitted), by "open[ing] the floodgates to other requests . . . from similarly interested parties," *Kearns v. Cuomo*, 2019 WL 5060623, at *6 (W.D.N.Y. Oct. 9, 2019). The Professors do not represent the diverse views of the NYU faculty, let alone the views of tens of thousands of NYU students. For this reason (among others), the cases that the Professors cite are inapposite. *See* ECF 52 at 26. Both allowed permissive intervention by groups that represented a large number of individuals with interests in the litigation. *See Hum. Servs. Council of New York v. City of New York*, 2022 WL 4585815, at *5 (S.D.N.Y. Sept. 29, 2022) (allowing a labor union that represented roughly 25,000 employees to intervene to represent the interests of employees); *335-7 LLC v. City of New York*, 2020 WL 3100085, at *4 (S.D.N.Y. June 11, 2020) (allowing two tenant advocacy groups to intervene to represent the interests of its members). Granting the Professors' motion, by contrast, would invite similar applications from scores of other concerned members of the NYU community, prolonging the litigation and rendering it unwieldy.

## CONCLUSION

For the foregoing reasons, the Court should deny the Professors' Motion to Intervene under Rules 24(a) and 24(b).

Dated:  April 19, 2024

Respectfully submitted,

*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli*
*Pro Hac Vice*
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, California 90067
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779
E-mail:  dpetrocelli@omm.com

Daniel L. Cantor
Anton Metlitsky
Jennifer B. Sokoler
O'MELVENY & MYERS LLP
7 Times Square
30th Floor
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
E-mail:  dcantor@omm.com
          ametlitsky@omm.com
          jsokoler@omm.com

*Counsel for Defendant New York University*