```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| BELLA INGBER, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>-against-<br><br>NEW YORK UNIVERSITY,<br><br>　　　　　　　Defendant. | No. 23-CV-10023 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

　　　The Court is in receipt of Plaintiffs' unopposed letter motion, (see dkt. no. 65), seeking to file under seal the unredacted version of the Declaration of Bella Ingber (the "Inger Declaration"), (see dkt. no. 62), and the anonymous declaration of a member of Students Against Antisemitism, Inc. ("SAA"), identified by Plaintiffs as "Member #2" (the "SAA Member #2 Declaration" and, together with the Ingber Declaration, the "Declarations"), (see dkt. no. 63).  Plaintiffs filed each of the Declarations in support of their Memorandum of Law in Opposition to Defendant's motion to dismiss Plaintiff's Amended Complaint. (See dkt. no. 61 ["Pl. Opp. Br."].)

　　　Although the judicial documents for which Plaintiffs request sealing carry a "strong presumption of [public] access," sealing is justified when a district court renders "specific, on-the-record findings that sealing is necessary to preserve higher values" and the district court issues a sealing order "narrowly

1

tailored to achieve that aim." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 121, 124 (2d Cir. 2006).

In fashioning such a sealing order, the court must balance competing considerations against the presumption of public access that applies to judicial documents. See id. at 120. One such competing interest, or higher value, the court must consider is the privacy interest of those who would be affected by disclosure. See id.

Plaintiffs seek to redact identifying information about Member #2 from the SAA Member #2 Declaration. Although the Court may rely upon it as a judicial document, "the public will be able to read and fully understand" the SAA Member #2 Declaration "even with [the] identifying information redacted." Doe v. N.Y. Univ., 2023 WL 2609315, at *1-2 (S.D.N.Y. Mar. 22, 2023) (granting plaintiff's request to redact sensitive personal identifying information and proceed pseudonymously because the case "involve[d] highly sensitive and personal matters"). Specifically, the SAA Member #2 Declaration provides sufficient unredacted information about Member #2's personal involvement in SAA to support Plaintiffs' assertion that SAA has associational standing to sue. (See SAA Member #2 Declaration ¶¶ 2, 7-11; Pl. Opp. Br. at 35.)

The SAA Member #2 Declaration also contains unredacted information about specific incidents of antisemitic harassment

2

Member #2 asserts she experienced as a student in October and November 2023, which incidents are undoubtedly "sensitive and personal" in light of Member #2's apparent fear of retaliation as an "easily identifiable" "ethnic and religious Jew."  See Doe, 2023 WL 2609315, at *2; (see also SAA Member #2 Declaration ¶¶ 3-5).  The protection of such sensitive personal identifying information, including Member #2's name, "legitimately counsel[s] against disclosure of" the information Plaintiffs seek to redact.  See Doe, 2023 WL 2609315, at *2 (internal quotations and citations omitted).

Plaintiffs have requested to redact only narrow portions of the SAA Member #2 Declaration that contain personal identifying information about Member #2.  Given the highly sensitive nature of the personal identifying information as well as the content of the remainder of the SAA Member #2 Declaration—which will provide the public with sufficient information regarding Plaintiffs' standing arguments—the Court concludes that the privacy interests of Member #2 outweigh the public interest in the disclosure of the redacted information.  Accordingly, the proposed redactions are tailored narrowly enough to preserve Member #2's privacy interests without jeopardizing the right of access that presumptively applies to judicial documents.  The Court therefore grants the motion to seal the unredacted version of the SAA Member #2 Declaration.  See Lugosch, 435 F.3d at 120, 124.

3

The request to redact certain portions of the Ingber Declaration presents a different analysis. The portions of the Ingber Declaration that the public could use to identify members of SAA by their race, religion, ethnicity, nationality, or gender is of the same sensitive and personal nature that the Court has described above with respect to the information to be redacted in the SAA Member #2 Declaration. The protection of such sensitive personal information and the narrowly tailored redaction Plaintiffs have proposed warrants such limited redaction of racial, religious, ethnic, nationality, or gender information in the Ingber Declaration. See id.

However, the Court denies Plaintiffs' request to redact the portions of the Ingber Declaration that pertain to the numerosity and the extent of membership of SAA. There exists an "[i]nviolability of privacy in group association" that may "in many circumstances be indispensable to preservation of freedom of association" that is protected by the First Amendment. Nat'l Assoc. for the Advancement of Colored People v. Ala. ex rel. Patterson, 357 U.S. 449, 462 (1958). Because of this First Amendment interest, courts have "long recognized that an organization can assert associational privacy rights on behalf of its members." Am. Civ. Liberties Union v. Clapper, 785 F.3d 787, 802 (2d Cir. 2015). The risk that compelled disclosure would chill the expression of an organization's members, who "would reasonably

4

[be] prevent[ed] . . . from engaging in further speech and/or association," creates the constitutional basis for this privacy right of organizations. Citizens United v. Schneiderman, 882 F.3d 374, 381 (2d Cir. 2018).

On this basis, courts have held that the there is a qualified privilege against "compelled disclosure of an association's members or sympathizers" and the "sources or uses of [its] funds," see Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 1985 WL 315, at *8 (S.D.N.Y. Feb. 28, 1985) (collecting cases), as well as "the names of an organization's members, the names of campaign contributors, the names of producers of political leaflets, or the names of persons who circulate petitions," Church of Am. Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 209 (2d Cir. 2004).

However, Plaintiffs have not provided, nor has the Court found, any legal support for the proposition that confidential information "protected by th[is] associational privilege" of anonymity includes information about the numerosity or extent of the organization's membership. (See dkt. no. 65 at 3.) It is not apparent to the Court why public access to the number of members, rather than to the identities or identifying information of the members themselves, creates the risk of chilling further expression or association with SAA that the First Amendment prohibits. See Schneiderman, 882 F.3d at 381. The associational

5

privilege of anonymity does not extend to protect against the disclosure of the size of an organization's membership.

Accordingly, the Court grants Plaintiffs' unopposed motion to file under seal the unredacted versions of the SAA Member #2 Declaration.  The Court grants Plaintiffs' request to redact the portions of the Ingber Declaration that contain information about the race, religion, ethnicity, nationality, or gender of the members of SAA.  The Court denies Plaintiffs' request to redact the portions of the Ingber Declaration that contain information about the numerosity of the membership of SAA.

Plaintiffs shall submit to the Court and to counsel for Defendant a version of the Ingber Declaration with proposed redactions that comport with the parameters described in this order.  Such proposed redactions shall be submitted no later than May 14, 2024.

The Clerk of the Court shall close docket entry number 65.

**SO ORDERED.**

Dated:    May 7, 2024
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge