**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BELLA INGBER, SABRINA MASLAVI, NEVO YEMINI, AVIGAIL TEILER, and STUDENTS AGAINST ANTISEMITISM, INC., <br><br>                 Plaintiffs, <br><br>       -against- <br><br> NEW YORK UNIVERSITY, <br><br>                 Defendant. | Case No. 23-cv-10023-LAP <br><br> Hon. Loretta A. Preska <br><br> **NEW YORK UNIVERSITY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1), (6) AND TO STRIKE PURSUANT TO FED. R. CIV. P. 12(F)** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.   THE COURT SHOULD DISMISS UNDER RULE 12(B)(1)
     PLAINTIFFS' SWEEPING REQUESTS FOR INJUNCTIVE RELIEF
     AND ALL CLAIMS BY PLAINTIFF SAA FOR LACK OF STANDING. ........ 3

     A.   Plaintiffs Do Not Have Standing to Pursue Injunctive Relief. ................. 3

     B.   Plaintiff SAA Does Not Have Associational Standing. ............................ 5

II.  THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(B)(6). ........... 7

     A.   Plaintiffs Fail to Plausibly Plead A Title VI Claim. ................................ 7

          1.   No Plaintiff Alleges Harassment Actionable Under Title
               VI. ................................................................................................ 7

          2.   Plaintiffs Cannot Plausibly Plead That NYU Has
               Responded To Incidents Of Antisemitism With
               Indifference. ................................................................................. 9

               a.   NYU's Campuswide Response to Antisemitism
                    Refutes Any Inference of Deliberate Indifference. ........... 10

               b.   The Complaint Does Not Plausibly Plead That
                    NYU's Response to Any Incident Was Clearly
                    Unreasonable. ................................................................... 12

          3.   Plaintiffs Fail To Plausibly Plead A Direct-Discrimination
               Theory. ....................................................................................... 14

     B.   PLAINTIFFS FAIL TO PLAUSIBLY PLEAD CLAIMS UNDER
          STATE OR CITY LAW. ......................................................................... 15

III. THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(B)(1)
     BECAUSE PLAINTIFFS' CLAIMS ARE UNRIPE. ...................................... 17

IV.  THE COURT SHOULD STRIKE PLAINTIFFS' REQUEST FOR
     DISCIPLINARY MEASURES AND TERMINATION OF UNIVERSITY
     EMPLOYEES. ............................................................................................... 18

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
  28 F.4th 343 (2d Cir. 2022) ..................................................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 13

*Aubrey v. New Sch.*,
  624 F. Supp. 3d 403 (S.D.N.Y. 2022) .................................................... 16

*Banks v. Gen. Motors, LLC*,
  81 F.4th 242 (2d Cir. 2023) ..................................................................... 8

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004) ..................................................................... 6

*Barnett v. Johnson City Sch. Dist.*,
  2005 WL 8178066 (N.D.N.Y. Feb. 2, 2005) ........................................ 7, 8

*Bernheim v. N.Y. City of Dep't of Education*,
  2020 WL 3865119 (S.D.N.Y. July 9, 2020) .......................................... 16

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014) ..................................................................... 6

*BMG Monroe I, LLC v. Vill. of Monroe*,
  93 F.4th 595 (2d Cir. 2024) ................................................................... 17

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Bos.*,
  89 F.4th 46 (1st Cir. 2023) ....................................................................... 6

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................................... 4

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................. 3

*Cotton v. Noeth*,
  96 F.4th 249 (2d Cir. 2024) .............................................................. 17, 18

*Crandell v. N.Y. Coll. of Osteopathic Med.*,
  87 F. Supp. 2d 304 (S.D.N.Y. 2000) ................................................. 13, 14

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ........................................................................ *passim*

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Doe v. Sacks*,
  2024 WL 402945 (S.D.N.Y. Feb. 2, 2024) .................................................. 6, 13, 14

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
  423 F. Supp. 2d 173 (S.D.N.Y. 2006) ........................................................... 10

*Emps. Committed For Just. v. Eastman Kodak Co.*,
  407 F. Supp. 2d 423 (W.D.N.Y. 2005) ............................................................ 6

*Faggionato v. Lerner*,
  500 F. Supp. 2d 237 (S.D.N.Y. 2007) ........................................................... 2, 4

*Gally v. Columbia Univ.*,
  22 F. Supp. 2d 199 (S.D.N.Y. 1998) ............................................................ 16

*Harary v. Allstate Ins. Co.*,
  983 F. Supp. 95 (E.D.N.Y. 1997) ............................................................... 17

*Hosp. Council of W. Pa. v. City of Pittsburgh*,
  949 F.2d 83 (3d Cir. 1991) ...................................................................... 6

*Howley v. Stratford*,
  217 F.3d 141 (2d Cir. 2000) ..................................................................... 8

*Hunt v. Washington State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ............................................................................. 5

*In re Merrill Lynch Auction Rate Secs. Litig.*,
  851 F. Supp. 2d 512 (S.D.N.Y. 2012) .......................................................... 10

*Johnson v. NYU*,
  2018 WL 3966703 (S.D.N.Y. Aug. 20, 2018) ................................................... 15

*Joseph S. v. Hogan*,
  561 F. Supp. 2d 280 (E.D.N.Y. 2008) ............................................................ 6

*Kasperek v. N.Y. State, DOC & Cmty. Supervision*,
  2022 WL 682633 (W.D.N.Y. Mar. 8, 2022) ...................................................... 8

*Koch v. Greenberg*,
  14 F. Supp. 3d 247 (S.D.N.Y. 2014) ........................................................... 16

*Koumantaros v. City Univ. of New York*,
  2007 WL 840115 (S.D.N.Y. Mar. 19, 2007) .................................................... 14

*Leibovitz v. N.Y.C. Transit Auth.*,
  252 F.3d 179 (2d Cir. 2001) ................................................................... 6, 8

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Lulac Councils 4433 & 4436 v. City of Galveston,*
    942 F. Supp. 342 (S.D. Tex. 1996) ................................................................. 7

*Mandell v. Cnty. Of Suffolk,*
    316 F.3d 368 (2d Cir. 2003) ......................................................................... 15

*Minto v. Molloy College,*
    2019 WL 4696287 (E.D.N.Y. Sept. 26, 2019) ......................................... 15

*N.Y.C.L.U. v. Grandeau,*
    528 F.3d 122 (2d Cir. 2008) ......................................................................... 17

*Novio v. N.Y. Acad. of Art,*
    286 F. Supp. 3d 566 (S.D.N.Y. 2017) .......................................................... 16

*Nungesser v. Columbia Univ.,*
    244 F. Supp. 3d 345 (S.D.N.Y. 2017) ................................................... 7, 16

*Playboy Enters., Inc. v. Pub. Serv. Comm'n of Puerto Rico,*
    906 F.2d 25 (1st Cir. 1990) ............................................................................ 6

*Rent Stabilization Ass'n v. Dinkins,*
    5 F.3d 591 (2d Cir. 1993) ............................................................................... 5

*Roe v. St. John's Univ.,*
    91 F.4th 643 (2d Cir. 2024) ....................................................................... 6, 7

*Schwapp v. Town of Avon,*
    118 F.3d 106 (2d Cir. 1997) ........................................................................... 8

*Shain v. Ellison,*
    356 F.3d 211 (2d Cir. 2004) ........................................................................... 4

*Simmonds v. INS,*
    326 F.3d 351 (2d Cir. 2003) ......................................................................... 18

*Students for Fair Admission v. Harvard,*
    600 U.S. 181 (2023) ........................................................................................ 5

*Strujan v. Lehman Coll.,*
    2008 WL 11422126 (S.D.N.Y. Aug. 12, 2008)) .......................................... 7

*T.E. v. Pine Bush Cent. Sch. Dist.,*
    58 F. Supp. 3d 332 (S.D.N.Y. 2014) ...................................................... 9, 14

*Ward v. NYU,*
    2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000) .......................................... 16

**TABLE OF AUTHORITIES**

*(continued)*

**Page(s)**

*Warth v. Seldin*,
　　422 U.S. 490 (1975) ............................................................................................ 6

*Wash. Legal Found. v. Leavitt*,
　　477 F. Supp. 2d 202 (D.D.C. 2007) .................................................................. 5

*Zeno v. Pine Plains Cent. Sch. Dist.*,
　　702 F.3d 655 (2d Cir. 2012) ...................................................................... *passim*

**Rules**

Fed. R. Evid. 201 ...................................................................................................... 13

## INTRODUCTION

The October 7, 2023 terrorist attack in Israel and its aftermath have heightened tensions and caused deep pain at New York University ("NYU" or "University"), as it has on college campuses nationwide.  Bridging these divides is difficult, which is one reason why the Supreme Court cautions against entertaining lawsuits—like this one—that ask courts to substitute their judgment for that of the school officials charged with navigating these challenging circumstances. *See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

The Amended Complaint ("FAC") alleges that each Plaintiff witnessed or experienced instances of antisemitic harassment, perpetrated by a few out of the University's tens of thousands of students and faculty, from October 2023 to January 2024.  Many of Plaintiffs' allegations are deeply concerning to NYU as a university, which prioritizes its students' well-being.  But as a legal matter, the only question is whether NYU has been "deliberately indifferent" to antisemitic harassment—*i.e.*, responded in a manner that was "clearly unreasonable." *Id.*  Because the FAC reflects that the University has taken extensive steps to address antisemitism on its campus—steps that are, as a matter of law, not clearly unreasonable—dismissal is proper.  *See id.*

In opposition, Plaintiffs repeatedly criticize NYU's response as "*ineffective*," Opp. 17, because they cannot plausibly allege it has been "*indifferent*," as Title VI requires, *Davis*, 526 U.S. at 648 (emphasis added).  Plaintiffs insist that they do not require "particular disciplinary action," Opp. 19, but they never suggest what more NYU could do other than impose more discipline, on more students and faculty, more quickly.  The Supreme Court has rejected using Title VI as a vehicle for such demands.  When the Court first established the "deliberate indifference" standard, it did so cautiously, mindful of the "flexibility [that schools] require" to function—flexibility that aids not only administrators, but also the tens of thousands of students and faculty that they serve. *Davis*, 526 U.S. at 648.  While the dissent would have gone even further, all justices agreed on the

"obvious" justifications "for the majority's expressed reluctance to allow courts and litigants to second-guess school disciplinary decisions." *Id.* at 678 (Kennedy, J., dissenting). "History shows," it explained, "that no matter what a school official chooses to do," some will view the response as "too strict," while others will see it as "too lax." *Id.* at 682 (quotation omitted); *see id.* at 648-49 (recognizing, "[l]ike the dissent," importance of flexibility).

Recent events on campus prove exactly that. In their brief, Plaintiffs cite a protest movement that swept many college campuses, including NYU's, over the past month. Opp. 3, 43; Declaration of SAA Member #2 ¶ 6. Plaintiffs liken these protests to those in Nazi Germany during the 1930s, suggesting that NYU's administrators—including a President whose own family were Holocaust survivors—are similarly complicit. Opp. 5. These inflammatory allegations are neither in the FAC nor properly considered under Rule 12(b)(6). But if this Court nonetheless considers recent events, they only confirm that NYU has taken "extraordinary" steps to protect its students, such as (i) requesting assistance from NYPD when protest activity—including from outside protestors—threatened the safety of its community; and (ii) announcing that it would discipline all students who persisted in violating University rules. Exs. 1 and 2.[1] While Plaintiffs see even those actions as "tolerat[ing]" and "enabl[ing]" antisemitism, Opp. 3, other community members have fiercely criticized NYU's approach as unduly restrictive of student and faculty speech, Ex. 2; *cf.* ECF No. 33 (Motion to Intervene). The path forward requires sustained effort and educational expertise: NYU will continue to respond decisively to antisemitism or calls for violence on its campus, but it must also allow its students and faculty to voice political opinions—

---

[1] In addition to the exhibits attached to its opening brief, *see* MTD 1 n.1, NYU attaches Exhibits 1 and 2 to the Second Declaration of Daniel L. Cantor to respond to new allegations in Plaintiffs' legal briefing and the accompanying SAA Member #2 Declaration. The Court may properly consider Exhibits 1 and 2 for purposes of Rule 12(b)(1). *See Faggionato v. Lerner*, 500 F. Supp. 2d 237, 243 (S.D.N.Y. 2007).

including those critical of Israel's policies—and de-escalate tensions where possible.

This Court should dismiss the suit under Rule 12(b)(6) for failure to state a claim:  Plaintiffs ask this Court to do what Title VI forbids—to "second-guess[] the disciplinary decisions made by school administrators."  *Davis*, 526 U.S. at 648.  Alternatively, the Court should dismiss the FAC under Rule 12(b)(1), as Plaintiffs lack standing to pursue injunctive relief, and Plaintiff SAA lacks standing to proceed at all.  Their contrary arguments stem from a flawed premise—that they have standing to bring suit on behalf of all of NYU's thousands of "Jewish and Israeli students," Opp. 34, even though those students have diverse views, including some that differ from Plaintiffs' own.  At the very least, this dispute is not ripe.  The fact that Plaintiffs' opposition raises new allegations only underscores the point—this Court cannot evaluate NYU's ongoing response to events that are changing in real-time.  For all these reasons, the FAC should be dismissed.

## ARGUMENT

## I.   THE COURT SHOULD DISMISS UNDER RULE 12(B)(1) PLAINTIFFS' SWEEPING REQUESTS FOR INJUNCTIVE RELIEF AND ALL CLAIMS BY PLAINTIFF SAA FOR LACK OF STANDING.

### A.   <u>Plaintiffs Do Not Have Standing to Pursue Injunctive Relief.</u>

As a threshold matter, NYU has explained why Plaintiffs lack standing to pursue injunctive relief:  No Plaintiff plausibly pleads that *NYU* will cause them a "certainly impending" injury.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *see* MTD 14-19.  While Plaintiffs now claim that NYU is the "direct cause" of their injuries, Opp. 34, the FAC attributes their injuries to "third part[ies]," *i.e.*, teachers, students, or other protestors, *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 668 (2d Cir. 2012), and alleges that Plaintiffs fear future harassment "at the hands of other students and faculty members," *e.g.*, FAC ¶¶ 241-42; Opp. 31.  NYU demonstrated why Plaintiffs do not clearly allege that they will personally experience future harassment.  *See* MTD 15-17.  But even if they did, they fail to plausibly allege that NYU will be responsible or that it

will respond inadequately.  Their own allegations belie any inference that NYU has done "little or nothing in response to student complaints," Opp. 33, particularly when this Court considers—as it must—NYU's non-disciplinary measures, *infra* at 10-12.  And to the extent Plaintiffs seek an injunction to require *disciplining* certain students or professors, Opp. 32, they have no standing to seek "particular remedial demands," as such relief is not available under Title VI.  *Davis*, 526 U.S. at 648; *see infra* Part IV.  In all events, Plaintiffs cannot predict how NYU might respond to future injuries that they might sustain—including what discipline it might issue—and this Court should decline to credit their "speculation."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983).

If doubt remains as to whether NYU will cause an imminent injury, that would only mean that standing to seek injunctive relief turns on disputed questions of fact, such that the Court may properly look to materials outside the FAC.  *Faggionato*, 500 F. Supp. 2d at 243.[2]  In its opening brief, NYU outlined the extensive actions that it has taken in response to incidents of antisemitism.  MTD 4-7; Pina Decl. ¶¶ 2-7.  These measures calmed the initial wave of tension on campus, MTD 15-18, and NYU also explained that it remained "ready to address issues as they arise, including by tapping NYPD through its strong partnership on an as needed basis," *id.* at 24 (quoting Ex. F) (alterations omitted).  Recent events—including the protests that Plaintiffs cite (Opp. 3)—confirm that NYU meant what it said.  Exs. 1 & 2.  To the extent NYU students or faculty persist in misconduct notwithstanding the clear threat of disciplinary or even criminal repercussions, such conduct is unacceptable, but it is also not fairly traceable to a University that has taken and will

---

[2] Plaintiffs are wrong that standing is "so intertwined" with the merits that the resolution of one depends on the other.  Opp. 29.  The Title VI inquiry is limited to whether NYU has responded with "deliberate indifference" to the *past* incidents of harassment alleged in the FAC.  *Davis*, 526 U.S. at 648.  But even if Plaintiffs suffered past harm, "standing to seek injunctive relief is a different matter."  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).  That inquiry focuses on whether Plaintiffs will suffer *future* injury and how NYU will respond.  *Supra* at 3-4.  NYU's ongoing efforts are critical to that question and ascertainable only by looking outside the FAC.

continue to take "extraordinary measures" to "secure the safety of [its] community."  Ex. 2.

Finally, at minimum, there is a significant mismatch between Plaintiffs' alleged injuries and their requested relief, which sweeps far beyond the policies or persons who have allegedly injured—or could conceivably injure—them.  *See* MTD 18-19.  Plaintiffs maintain that they may seek relief on behalf of *all* of NYU's thousands of "Jewish and Israeli students," effectively converting this Title VI lawsuit into a class action.  Opp. 34.  But they do not allege that all of NYU's diverse Jewish and Israeli students have suffered the same injuries as them, much less agree as to how NYU should enforce its "policies, practices, procedures, or protocols" or as to whom it must "terminate[]" or "exp[el]," Prayer for Relief, A.  This Court, at the very least, should limit Plaintiffs' ability to pursue injunctive relief to remediating their own alleged injuries.

### B.     Plaintiff SAA Does Not Have Associational Standing.

Plaintiff SAA does not have associational standing for two independent reasons.

<u>First</u>, SAA is not a "traditional" membership organization.  *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342, 344-45 (1977).  In arguing otherwise (Opp. 35-39), Plaintiffs ignore NYU's argument that SAA lacks associational standing because it was created *after* this litigation began.  As explained (MTD 19-20), these unusual facts distinguish SAA from the entity plaintiff in *Students for Fair Admission v. Harvard* (*SFFA*), which was a registered non-profit organization "*at the time*" the lawsuit was filed.  600 U.S. 181, 200-201 (2023) (emphasis added).  *SFFA* casts no doubt on case law addressing the reverse sequence—*i.e.*, where, as here, the organization "first determined to bring th[e] suit and only then identified" members with standing to sue.  *Wash. Legal Found. v. Leavitt*, 477 F. Supp. 2d 202, 211 (D.D.C. 2007).

<u>Second</u>, the nature of SAA's claims and requested relief require the "individual participation" of its members.  *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993); MTD 20-22.  While Plaintiffs contend that "[t]he SAA members are not 'indispensable'" because

they challenge "a widespread practice of discrimination against Jewish and Israeli students," Opp. 36, that argument misstates the nature of their claims.  As explained above, deliberate-indifference claims must proceed plaintiff-by-plaintiff, focusing on "*the target of discrimination*," *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001).  Under this inquiry, each plaintiff "must show that he [or she] subjectively perceived the environment to be hostile" and that a reasonable person in her circumstances would agree, *Roe v. St. John's Univ.*, 91 F.4th 643, 661 (2d Cir. 2024), and the court must assess the "accommodations" that the school provided to each student in response, *Doe v. Sacks*, 2024 WL 402945, at *6 (S.D.N.Y. Feb. 2, 2024).  This student-by-student analysis "make[s] the individual participation of each injured party indispensable."  *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

Of course, that does not mean that associational standing is *never* appropriate in Title VI cases.  Associational standing may be proper where plaintiffs challenge the validity of a written university-wide policy, *see* MTD 20-21, where the claims "turn on a question of law,"[3] or where the participation of every member is otherwise not "necessary."[4]  But where, as here, a plaintiff asserts hostile-environment claims that require "individualized proof," associational standing is improper—even where it requests "equitable relief rather than damages."  *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 289 (3d Cir. 2014) ("highly individualized nature of [members'] claims" foreclosed associational

---

[3] *Playboy Enters., Inc. v. Pub. Serv. Comm'n of Puerto Rico*, 906 F.2d 25, 35 (1st Cir. 1990); *see Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Bos.*, 89 F.4th 46, 55 (1st Cir. 2023) (associational standing given "documented and apparently uncontested nature of the student-specific facts"); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 308 (E.D.N.Y. 2008) (claims could "be resolved by answering common questions of law without individualized proof").

[4] *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 90 (3d Cir. 1991); *Emps. Committed For Just. v. Eastman Kodak Co.*, 407 F. Supp. 2d 423, 433-34 (W.D.N.Y. 2005) (pattern or practice claim that relied primarily on statistical evidence to establish discrimination "that was equally harmful to all members of the protected class," instead of "subjective" and individualized proof)

standing); *Lulac Councils 4433 & 4436 v. City of Galveston*, 942 F. Supp. 342, 345 (S.D. Tex. 1996) (citing "individualized nature of discrimination cases"); *Barnett v. Johnson City Sch. Dist.*, 2005 WL 8178066, at *5 n.6 (N.D.N.Y. Feb. 2, 2005) ("claims of intentional discrimination could [not] be prosecuted without the participation of individual members").

## II.    THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(B)(6).

This Court should dismiss what remains of the FAC under Rule 12(b)(6), as Plaintiffs fail to state a claim under Title VI, and they cannot repurpose the same claims under state or city law.

### A.    Plaintiffs Fail to Plausibly Plead A Title VI Claim.

This Court should dismiss each Plaintiff's Title VI claim under Rule 12(b)(6).  To proceed, each Plaintiff must plausibly plead facts showing that she experienced "severe and discriminatory harassment," over which NYU had "substantial control" and "actual knowledge," and to which it responded with "deliberate indifference."  *Zeno*, 702 F.3d at 665.  Even if considered in isolation, the FAC's conclusory allegations do not plausibly satisfy Title VI's "high standard," *Davis*, 526 U.S. at 643, and the documents it incorporates confirm that dismissal is proper.[5]

### 1.    No Plaintiff Alleges Harassment Actionable Under Title VI.

As an initial matter, no Plaintiff alleges that he or she has personally experienced the "extreme" or extended harassment necessary to constitute an actionable hostile environment, *Roe*, 91 F.4th at 661-62 (affirming dismissal under 12(b)(6)); *see also Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 371, 378-79 (S.D.N.Y. 2017) (dismissal under 12(b)(6)); *Strujan v. Lehman Coll.*, 2008 WL 11422126, at *4 (S.D.N.Y. Aug. 12, 2008) (similar at summary judgment); MTD

---

[5] While not necessary to prevail, NYU cites Exhibits A, B, K, and M-Q to the Cantor Declaration in support of its Rule 12(b)(6) motion.  NYU explained in its opening brief why the Court may properly reference these exhibits, *see* MTD 1 n.1, and Plaintiffs do not dispute that the FAC excerpts and "incorporate[s] by reference" Exhibits B, K, M, and Q, *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022).  For the reasons explained below, this Court may also properly consider the remaining exhibits.  *See infra* n.7 and n.9.

26-31.  Indeed, Plaintiffs suggest only in footnotes that each has *individually* experienced the necessary level of harassment.  Opp. 11-12 n.6 & 8.  Plaintiffs' cited cases are inapposite as they involved specific allegations of highly targeted—and often extended—harassment.[6]

Plaintiffs' real argument is that because they have alleged an "atmosphere of anti-Semitism which permeates NYU" *generally*, harassment directed at any one of NYU's thousands of Jewish or Israeli students—at any of its 18 schools—is relevant to their claims.  Opp. 10.  The Second Circuit, however, has expressly rejected such a "broad conception" of what constitutes a student's educational "environment."  *Leibovitz*, 252 F.3d at 188.   In *Leibovitz*, the Second Circuit made clear that the inquiry focuses on the individual who is "*the target of the discrimination*."  *Id.*  For that reason, "harassing conduct directed at someone other than plaintiff" may be relevant—albeit of "limited probative value"—if known to the plaintiff and part of her regular environment, *id.*, such as when perpetrated by a "fellow employee or supervisor" with whom the plaintiff regularly interacts, *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 267 (2d Cir. 2023); *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997).  But a plaintiff's educational "environment" does not extend to harassment that occurred out of the plaintiff's "sight and regular orbit," *Leibovitz*, 252 F.3d at 188.

That is why most allegations in the FAC are not relevant to *all* Plaintiffs, and many have no relevance to *any* Plaintiff.  MTD 29-30.  For one thing, Plaintiffs do not defend any definition of an educational environment that would include events not known to a Plaintiff before she filed suit, nor events that occurred prior to her arrival on campus—which for some is as late as

---

[6] *Howley v. Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (firefighter's subordinate "perpetrated repeated acts of harassment" to "undermine her subordinates' respect," including "verbal[ly] assault[ing]" her before colleagues, claiming she "had gained her office of lieutenant only by performing fellatio"); *Kasperek v. N.Y. State, DOC & Cmty. Supervision*, 2022 WL 682633, at *2-3 (W.D.N.Y. Mar. 8, 2022) (teacher who received multiple "threatening phone calls" and saw graphic graffiti left in her classroom "on seven occasions"); *Barnett*, 2005 WL 8178066, at *2-3 (student *suspended* after becoming upset at derogatory comments directed at his parents).

September 2023 (FAC ¶ 18; Member #2 Decl. ¶ 1) and at the earliest was September 2020 (FAC ¶¶ 17-20).  Nor can a Plaintiff plausibly allege a hostile environment from "avoiding … professors [and] classes" (Opp. 8) that they do not allege they would have otherwise pursued, especially in schools in which they are not even enrolled, *see* FAC ¶¶ 17-23.  Plaintiffs do not make specific allegations that each could have and would have taken the courses they cite, *see, e.g.*, FAC ¶¶ 171, 212, 220, 226, which would depend on the particulars of both the student's program of study and policies for any particular course.

Plaintiffs' cited cases only support this point.  In *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332 (S.D.N.Y. 2014), the court analyzed separately motions for summary judgment for three Jewish students who attended the same grade schools.  *Id.* at 338-39.  The court painstakingly recounted (*id.* at 339-42) the abuse that one student suffered over *seven years*—including students "telling him he was going to be burned in an oven, and that if he [responded], that they knew where he lived"—before doing the same for the second student (*id.* at 342-47) and third (*id.* at 347-50). The court thus allowed all claims to proceed only after "catalogu[ing] numerous incidents *for each Plaintiff* that exceed[ed]" the Title VI threshold.  *Id.* at 357 (emphasis added).  Because the FAC does not plausibly plead the same "for each Plaintiff," this Court should reject each claim.  *See id.*

### 2.   Plaintiffs Cannot Plausibly Plead That NYU Has Responded To Incidents Of Antisemitism With Indifference.

Plaintiffs also fail to plausibly plead that NYU acted with deliberate indifference, which they must prove to prevail on their harassment theory.  Rather than argue that NYU was deliberately indifferent to any "individual instance of bigotry," Plaintiffs contend that NYU displayed deliberate indifference more broadly to an "institutional problem" of antisemitism.  Opp. 15 (quotations omitted).  But they acknowledge—even as they downplay—NYU's extensive institutional efforts to combat antisemitism, and they cannot deny the limits of NYU's ability to

respond more specifically to some incidents, such as where it lacks control or knowledge.

###### a.   *NYU's Campuswide Response to Antisemitism Refutes Any Inference of Deliberate Indifference.*

Plaintiffs tick through NYU's efforts to root out antisemitism on campus: (i) issuing "official statements" to renounce antisemitism;[7] (ii) meeting personally "with the harassed students"; (iii) issuing a 10 Point Plan, including to promote dialogue and respect; (iv) "increasing police and security presence"; and (v) offering resources to its students, including Plaintiffs, "coping with emotional challenges." Opp. 7, 15-18. Plaintiffs discount each effort. Even "meting out discipline" does not suffice in their view. *Id.* at 18. Rather, all that matters is the "result[s]" they see, and because NYU was allegedly "ineffective" in entirely eliminating the "institutional problem" of antisemitism in the brief time that elapsed between the incidents they cite and the filing of this suit, the Court can deem NYU's efforts deliberately indifferent. *Id.* at 15-18.

That is exactly the sort of hindsight bias the Supreme Court has warned against. Under Title VI, a school can be held liable only if its response to a hostile environment was "*clearly unreasonable.*" *Davis*, 526 U.S. at 648. "This is not a mere 'reasonableness' standard, as [Plaintiffs] assume," but instead a test meant to afford schools "sufficient[] flexib[ility]" and to avoid entangling courts in disputes that "second-guess" the decisions of school administrators. *Id.* at 649. The Second Circuit's decision in *Zeno* only proves the point, as it affirmed that "eliminating harassment is not a prerequisite to an adequate response." 702 F.3d at 670. It faulted a school only for using the "same methods"—*i.e.*, disciplinary measures—to remedy racial

---

[7] Plaintiffs do not question that Exs. A, N, and P "authentic[ally]" reflect "information publicly announced on a party's website." *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006). The Court may take judicial notice of these documents because NYU relies on them only to "demonstrate[e] the existence of information," *i.e.*, that it has issued multiple statements condemning antisemitism or disavowing hateful rhetoric. *In re Merrill Lynch Auction Rate Secs. Litig.*, 851 F. Supp. 2d 512, 526 n.4 (S.D.N.Y. 2012).

discrimination that had been targeted at a student for *years*, even as the school "knew" that disciplining the harassers "did not deter others from engaging [] in serious and offensive racial conduct." *Id.* at 669. The school's actions were "clearly unreasonable" not because the court or plaintiffs *thought* greater action was required, but because the school "*knew*" it was, and nonetheless "dragged its feet" for "a year or more" before "implementing any non-disciplinary" remedies. *Id.* at 667-69 (emphasis added).

The FAC pleads nothing of the sort. Plaintiffs filed suit just months (and sometimes days) after the incidents they allegedly experienced or witnessed. But even in that short time, Plaintiffs acknowledge that NYU has used varied and escalating approaches to address antisemitism—from community-wide statements to individual counseling; from disciplinary measures to partnering with NYPD to protect student safety. *See supra* at 10. Nor can Plaintiffs gain traction by looking backwards, alleging that NYU failed to entirely eliminate a "culture of antisemitic harassment" since it entered into an agreement with the Office for Civil Rights (the "OCR Agreement") in 2020. Opp. 15. The FAC reflects some (but not all) of the measures that NYU adopted following the OCR Agreement, including that its Nondiscrimination Policy now "incorporates the widely accepted definition of antisemitism promulgated by the IHRA." FAC ¶ 44. Plaintiffs do not plausibly plead that NYU "knew" that its efforts had proven ineffective merely by alleging that, over the next three years, instances of antisemitism recurred among a small number of NYU's thousands of students, scattered across its different schools. FAC ¶¶ 101-19. Even administrators dedicated to curbing antisemitism may not be able to "purg[e] their schools of actionable peer harassment." *Davis*, 526 U.S. at 648. Certainly, Plaintiffs cannot plausibly plead that NYU was "clearly unreasonable" for failing to anticipate and prevent the incidents central to the FAC—the on-campus fallout from the October 7 terrorist attack, an unprecedented event which

marked the "deadliest day for Jews since the Holocaust" and triggered a "rise in antisemitism on campus[es]" nationwide.  FAC ¶¶ 3, 39.

This lawsuit boils down to a demand for disciplinary measures.  To be sure, Plaintiffs insist that they are not requesting any "particular disciplinary action." Opp. 19 (quoting *Zeno*, 702 F.3d at 671 n.15).  But Plaintiffs never allege what Title VI requires NYU to have done differently other than take more disciplinary action more quickly.[8]  These allegations fail on their own terms, as Plaintiffs offer no more than conclusory allegations that NYU has not or will not issue any warranted discipline, which this Court need not credit (particularly in a suit filed shortly after the incidents they cite).  In any event, Plaintiffs cannot insist that NYU "engage in particular disciplinary action." *Zeno*, 702 F.3d at 671 n.15.  Nor will discipline answer every problem.  *Id.* at 669.  Thus, the FAC provides no plausible basis for holding that NYU responded with deliberate indifference to an "atmosphere" of antisemitism.  Opp. 19 (quotation omitted).

### b. The Complaint Does Not Plausibly Plead That NYU's Response to Any Incident Was Clearly Unreasonable.

NYU's campus-wide efforts refute any plausible claim of deliberate indifference, and Plaintiffs do not meaningfully argue that NYU has responded with deliberate indifference to any specific "incident[] of antisemitism"—particularly those witnessed or experienced personally by each Plaintiff.  *See* Opp. 15.  For good reason:  When this Court looks to the individual incidents that allegedly make up each Plaintiffs' own hostile environment, it becomes all the more clear—even from the face of the FAC—that NYU has taken "the steps it [can] to respond to Plaintiff's reports" of misconduct, consistent with its level of control and knowledge, and its commitment to

---

[8] *See, e.g.*, FAC ¶ 173, 174 (alleging NYU had "not taken any disciplinary action" against certain professors); *id.* ¶ 182 (calling for "discipline" of students and faculty); *id.* ¶ 193 (faulting NYU for not discussing "disciplin[e of] students and faculty members"); *id.* ¶ 206 (alleging NYU had "not suspended or expelled" student); *id.* ¶ 218 (alleging NYU had not "disciplin[ed]" professors or students); *id.* ¶ 237 (alleging "refusal to discipline antisemitic students and [] groups").

free speech.  *See Doe v. Sacks*, 2024 WL 402945, at *6 (S.D.N.Y. Feb. 2, 2024).

For many allegations—including for some of the most inflammatory and alarming—Plaintiffs fail to plead that NYU "exercise[d] substantial control over both the harasser and the context in which the known harassment occurs."  *Zeno*, 702 F.3d at 665 (quotation omitted). Plaintiffs suggest that NYU exercises the same level of control even when student misconduct occurs off campus, Opp. 22-24, but beyond being obviously wrong, MTD 35, that argument misses the point: NYU—a private institution—plainly cannot control *non-NYU* individuals who act in public spaces, such as city-run sidewalks and parks.  Yet the FAC often fails to plead that the alleged harassers were NYU community members, instead relying on broad descriptions such as "anti-Israel protestors," FAC ¶ 138, or "[p]eople in the crowd," *id.* ¶ 187; *see also* MTD 19-20 & 30 n.11.  Even where Plaintiffs speculate that it was "students" or "faculty"—rather than outside protestors—who were responsible for alleged incidents of harassment, *see, e.g.*, FAC ¶¶ 116, 147, 181, 207, the Court cannot credit such "[t]hreadbare" allegations, as it is hardly reasonable to infer that all individuals attending protests in public areas are affiliated with the University, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[9]

Even if the Court assumes some of the alleged harassment was committed by students or faculty, Plaintiffs do not plausibly plead that NYU had the actual knowledge necessary to respond beyond the institutional initiatives described above.  *See supra* at 10-12.  As Plaintiffs' cited cases (Opp. 13-14) reflect, a school "at minimum must have possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which [the] plaintiff's legal claim is based," *Crandell v. N.Y. Coll. of Osteopathic*

---

[9] This Court may take judicial notice of the terms of the Paulson Center's restrictive declaration (Ex. O) because this fact "can be accurately and readily determined from sources"—*i.e.*, a government filing—"whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

*Med.*, 87 F. Supp. 2d 304, 319 (S.D.N.Y. 2000). Thus, NYU's awareness of "anti-Semitic harassment in general" means that it can implement "extensive institutional efforts to combat antisemitism." Opp. 13. But where Plaintiffs demand discipline targeted at a specific individual in a school of more than 60,000 students and 19,000 faculty, they must allege that the school "knew" who was responsible for his alleged harassment, even if they may "wish that [the university] had gone to greater lengths to identify and discipline" any alleged harassers. *Doe*, 2024 WL 402945, at *6. At minimum, dismissal is proper as to Plaintiffs who do not allege that NYU had "actual knowledge that [he or she] was being harassed" at all. *See T.E.*, 58 F. Supp. 3d at 361; MTD 38-39 (Teiler, Yemeni) & 37 n.18 (SAA Member #1).

Finally, NYU cannot be held liable based on allegations that it failed to discipline students for protected speech. MTD 36-37. Plaintiffs say that they do not "seek to deny anyone the right to criticize Israeli policies," Opp. 4, but some allegations implicate criticism of Israel and its military campaign in Gaza, including calls for a "ceasefire," *e.g.*, FAC ¶¶ 215-17. And while NYU can and does disavow antisemitic speech, *see* Exs. A, B, M, N, P, the school is not unreasonable— much less "clearly" so—for managing its response in a way that does not "restrict[] students' speech-protected values" or the academic freedom of its faculty. *Doe*, 2024 WL 402945, at *7.

### 3. Plaintiffs Fail To Plausibly Plead A Direct-Discrimination Theory.

Plaintiffs also fail to plausibly allege direct discrimination. As NYU explained, to proceed under this theory, a plaintiff must allege that the school directly took some "adverse action" against him or her, such as dismissal or a suspension, *Koumantaros v. City Univ. of New York*, 2007 WL 840115, at *8 (S.D.N.Y. Mar. 19, 2007); *see also* MTD 40. Plaintiffs fail to respond at all to this argument, *see* Opp. 25-26, which alone precludes their claim.

In any event, Plaintiffs offer nothing beyond conclusory allegations to suggest that NYU adopted a "double standard" in its response to antisemitism compared to other forms of hate. FAC

¶¶ 221-39; *see* MTD 41.   Courts have dismissed complaints where the "plaintiffs failed to sufficiently allege substantially similar comparators to permit an inference of discriminatory intent based on disparate treatment." *Minto v. Molloy College*, 2019 WL 4696287, at *7 (E.D.N.Y. Sept. 26, 2019); *Johnson v. NYU*, 2018 WL 3966703, at *7 (S.D.N.Y. Aug. 20, 2018).   Because Plaintiffs do not claim that NYU took any direct action *against them*, they instead ask this Court to compare the treatment of parties not before it—comparing, *e.g.*, the alleged discipline of two professors for unrelated incidents (FAC ¶¶ 223, 224), with that of a professor for alleged "anti-Israel and antisemitic rhetoric" (FAC ¶ 227), or the treatment of a fraternity with that of SJP (FAC ¶ 237). Plaintiffs cite no case in which a court has accepted this type of "disparate treatment evidence," which "must show [the plaintiff] was similarly situated in all material respects to the individuals with whom she seeks to compare *herself*." *Mandell v. Cnty. Of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (emphasis added).   In any event, they plead none of the facts relevant to comparing these cases, such as tenure status or any previous history of complaints.   These allegations fall "well short" of pleading a direct discrimination claim.   *Minto*, 2019 WL 469287, at *10.

### B.   PLAINTIFFS FAIL TO PLAUSIBLY PLEAD CLAIMS UNDER STATE OR CITY LAW.

NYU has explained (MTD 41-44) why Plaintiffs also fail to state a claim under state or city law, and none of Plaintiffs' responses (Opp. 26-29) have merit.

*First,* Plaintiffs agree that claims under NYHRL § 296 and NYCRL § 40-c are subject to the same standard as analogous claims under federal discrimination law.   Opp. 26.   Those claims must be dismissed for the same reasons as their Title VI claims must be.   *See supra* at 7-14.

*Second*, Plaintiffs' claims under NYCHRL §§ 8-107(4) and 8-107(17) fail for largely the same reason.   Plaintiffs suggest that they "need only show differential treatment," or that they were treated "less well" because of a protected characteristic, to state a claim.   Opp. 26-27.   But Plaintiffs

ignore that the NYCHRL also requires Plaintiffs to show either direct discrimination, *Novio v. N.Y. Acad. of Art*, 286 F. Supp. 3d 566, 584 (S.D.N.Y. 2017), or "deliberate indifference," *Bernheim v. N.Y. City of Dep't of Education*, 2020 WL 3865119, at *5 (S.D.N.Y. July 9, 2020).  Because Plaintiffs have shown neither, *supra* at 9-15, they fail to state a claim under the NYCHRL.[10]

*Third,* Plaintiffs fail to allege any "specifically designated and discrete promises" that could form the basis of a breach of contract claim.  *See* MTD 42-43 (quoting *Ward v. NYU*, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000)).  Plaintiffs misunderstand the law when they maintain— citing a case interpreting federal law—that they can base a contract claim on "a college's general commitments not to discriminate."  Opp. 28.  Applying New York law, courts have consistently held that a university's "promise" not to discriminate is "too vague to be enforced," as such promises lack "definitive language by which to objectively analyze performance."  *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 414 (S.D.N.Y. 2022); *see, e.g.*, *Ward*, 2000 WL 1448641, at *4; *Nungesser*, 244 F. Supp. 3d at 372.  That is true of the NYU policies Plaintiffs cite, as these "alleged promises about ethical conduct" are "subject to neither quantification nor objective evaluation."  *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998).[11]

*Fourth*, Plaintiffs cannot state a claim for consumer fraud under G.B.L. § 349 or § 350.  To start, Plaintiffs' claim that NYU has failed to follow its policies is neither plausibly pled, *supra* Part II, nor ripe, *infra* Part III.  Separately, Plaintiffs fail to point to any consumer-oriented conduct. Opp. 28-29.  Consumer-oriented conduct must be "aimed at the public at large," *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014), but NYU's policies are aimed at its students,

---

[10] Plaintiffs' claim under Section 8-107(17) fails for another, independent reason:  they still have not identified any specific "policy or practice" (*id.*) that allegedly injured Jewish or Israeli students, nor have they explained how that policy caused a disparate impact.  *See* Opp. 26-27.

[11] Plaintiffs abandon a claim based on the implied covenant of good faith and fair dealing, Opp. 27-28, and in any event, this claim must be dismissed as impermissibly duplicative, MTD 43.

faculty, and other community members.  *See* FAC ¶ 325.  These are not "advertising and marketing" materials for the public, Opp. 28, but rather internal guidelines meant to govern the University community.  Because they do not "have an impact on consumers generally," *Harary v. Allstate Ins. Co.*, 983 F. Supp. 95, 98 (E.D.N.Y. 1997), they cannot form the basis of a claim.

## III.   THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(B)(1) BECAUSE PLAINTIFFS' CLAIMS ARE UNRIPE.

At minimum, this Court should dismiss the suit as unripe under Rule 12(b)(1), as a "case [that] will be *better* decided later." *Cotton v. Noeth*, 96 F.4th 249, 256-57 (2d Cir. 2024).[12]

NYU does not raise a "trust-us" defense (Opp. 43) when it asks this Court to allow the University time to respond fully before adjudicating whether its actions were "clearly unreasonable," *Davis*, 526 U.S. at 648.  As explained, NYU can be liable only if it fails to respond at all to antisemitism on campus or "use[s] th[e] *same methods* to no avail" even after a "year or more" where it *knows* those efforts are ineffective.  *Zeno*, 702 F.3d at 669 (emphasis added).  Yet the Plaintiffs' injuries involve incidents that occurred just months—or even weeks or hours (*e.g.*, FAC ¶¶ 215-18)—before the FAC was filed.  Plaintiffs' briefing only compounds the problem, as they now cite (Opp. 3, Member #2 Decl. ¶ 6) events that occurred *after* NYU filed its MTD—events to which NYU responds on a daily basis, Exs. 1 & 2.  Necessarily, Plaintiffs cannot plausibly plead anything about the adequacy of NYU's response to such events—which is reason enough for dismissal under Rule 12(b)(6).  *See supra* at 9-14.  But if this Court disagrees, it should at least wait to see how the facts develop rather than "becoming embroiled" in a dispute that "may later turn out to be unnecessary."  *N.Y.C.L.U. v. Grandeau*, 528 F.3d 122, 130-31 (2d Cir. 2008).

That is especially true because delay will not "undermine[]" any party's rights.  *Cotton*, 96

---

[12] The Second Circuit has recently reiterated that "[r]ipeness has both constitutional and prudential dimensions."  *Id.*; *see also BMG Monroe I, LLC v. Vill. of Monroe*, 93 F.4th 595, 600-01 (2d Cir. 2024) (affirming dismissal on "prudential-ripeness grounds").

F.4th at 257.  The Second Circuit speaks to hardship to all "parties" when articulating this prong, *Simmonds v. INS*, 326 F.3d 351, 359 (2d Cir. 2003), and while Plaintiffs disparage NYU for seeking the "flexibility [required] to function," Opp. 2-4, the Supreme Court has recognized that stripping a school of such "flexibility" serves no one, *Davis*, 526 U.S. at 648.  Thus, while NYU does not question the sincerity of Plaintiffs' concerns, litigating now will not remedy the problem. Particularly since the semester is about to end and most students will leave campus, Plaintiffs will not face hardship if the Court waits until it is in a "better [position] to adjudicate the issues." *Simmonds*, 326 F.3d at 351.

## IV.   THE COURT SHOULD STRIKE PLAINTIFFS' REQUEST FOR DISCIPLINARY MEASURES AND TERMINATION OF UNIVERSITY EMPLOYEES.

If this lawsuit proceeds, this Court should still strike under Rule 12(f) Plaintiffs' request for specific disciplinary measures and the termination of NYU employees.  MTD 45.  Plaintiffs accept that they have no right to "particular disciplinary action" under Title VI.  Opp. 44 (quoting *Davis*, 526 U.S. at 648).  They argue only that the FAC does not request any "specific remedial measures" that are not available under Title VI.  *Id.*  Their Prayer for Relief, however, does exactly that:  it requests an injunction requiring, among other things, "the termination of deans, administrators, professors, and other employees" and the "suspension or expulsion" of University students.  These are "particular remedial demands" that require the court to "second-guess[] the disciplinary decisions made by school administrators."  *Davis*, 526 U.S. at 648.  Because Plaintiffs seek a remedy not authorized by the statute under which they seek relief, the Court should strike these requests as "immaterial" and "impertinent" under Rule 12(f).

### CONCLUSION

For the foregoing reasons, the Court should grant the Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) or, alternatively, to Strike under Rule 12(f)(1).

Dated:  May 14, 2024

Respectfully submitted,

*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli*
*Pro Hac Vice*
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, California 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
E-mail: dpetrocelli@omm.com

Daniel L. Cantor
Anton Metlitsky
Jennifer B. Sokoler
O'MELVENY & MYERS LLP
7 Times Square
30th Floor
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
E-mail: dcantor@omm.com
        ametlitsky@omm.com
        jsokoler@omm.com

*Counsel for Defendant New York University*